SETH JOHNSON, AS ADMINISTRATOR, OF P. P. JOHNSON, DECEASED, AND AS AN INDIVIDUAL, EUNICE COLEMAN, MARY HYSHAM, ORA JOHNSON, DAVID JOHNSON, S. P. JOHNSON, MARY JOHNSON RAY JOHNSON, A MINOR, AND JOSEPHINE JOHNSON, A MINOR, BY THEIR NEXT FRIEND, C. E. LIDDON, *Plaintiffs in Error, v. J. T. RHODES, Defendant in Error.*

1.  Plaintiff in error in whom there is a documentary title to land, can not recover it in an action of ejectment from a

Johnson v. Rhodes—Syllabus.

defendant who has been in possession thereof under a tax deed for more than four years before the suit was brought.

2. A plaintiff possessing documentary title to land cannot recover the land in an action of ejectment against a defendant when he and those under whom he claims title have been in open possession of the land for more than seven years before the suit was brought, claiming first under a sheriff's deed as color of title and then by successive deeds with continuous adverse possession in the several grantors.

3. A party is not required by law to record an ordinary deed to land, and when he entered into possession under his deed and has continued in possession up to the time of trial of a suit in ejectment against him for the recovery of said land, it is not reversable error for the trial judge to refuse to permit the plaintiff to ask him why he kept his deed off the record until after the suit was brought.

4. Where a defendant is claiming title to land by adverse possession reputation of ownership may be given in evidence.

5. A motion to strike the whole testimony of a witness, much of which was proper, is properly refused.

6. Where a witness is recalled by the party who introduced him, and questions were addressed to said witness by said party, calculated to produce the impression on the mind of the trial judge, that they were calculated to elicit testimony in conflict with his testimony in chief, and no explanation is given which would have avoided such a conclusion, and the testimony sought was not in rebuttal of any evidence of the opposite party, it cannot be held that the trial judge erred in refusing to allow such questions to be propounded.

7. The order of the introduction of testimony rests in the discretion of the trial judge, and the exercise of such discretion will not be disturbed unless it is apparent there has been an abuse of it. This doctrine applies to the opening of the plaintiff's case for the introduction of new evidence not in rebuttal, and to the recall of a witness for redirect examination.

8.  Where a sheriff's deed is only introduced as color of title, upon which adverse possession is predicated, it is immaterial whether such a deed is void or not.

9.  It is irregular for the trial judge to give a peremptory charge for the defendant before argument to the jury, but where the record fails to show that there was any demand for argument, and that this was not made a specific ground of objection to the action of the judge, the irregularity is not sufficient to cause a reversal.

This case was decided by Division B.

Writ of error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*Paul Carter* and *Wm. B. Farley,* for Plaintiffs in Error;

*C. L. Wilson,* and *Price & Lewis,* for Defendant in Error.

HOCKER, J.—On the 11th of July, 1906, an action of ejectment was instituted by the plaintiffs in error against the defendant in error and other parties as to whom the case was afterwards dismissed, to recover the possession of the S. E.¼ of the S. E.¼ of Section 13, Tp. 5, R. 13 N. & W., and the N. E.¼ of Section 24, Tp. 5, R. 13 N. & W., containing about 200 acres of land and mesne profits. The defendant filed a plea of not guilty. In June, 1910, the case was tried, and in accordance with affirmative charge by the judge the jury returned a verdict for the defendant. A motion for a new trial was made and overruled, and judgment was entered for the defendant, which is here for review on writ of error.

The plaintiffs proved title in their ancestor P. P. Johnson by a series of patents and deeds. There is no contention on this point. The defendant's case rests upon a title by adverse possession for seven years before the institution of the suit under color of title to the N. E.$\frac{1}{4}$ of Section 24, Tp. 5, Range 13 N. & W., and to possession for over four years, under a tax deed before the institution of the suit of the S. E.$\frac{1}{4}$ of the S. E.$\frac{1}{4}$ of Section 13, Tp. 5, Range 13 N. & W.

The evidence in this case is very much like that in all similar cases where the witnesses who testify to dates and facts do not always speak with the definiteness and certainty of trained minds. This condition of things generally and naturally gives occasion to many objections and exceptions on the part of the attorneys trying the case, and when all this is brought in the record to the appellate court whose members did not hear the testimony or observe the conduct of the witnesses, the task of reviewing satisfactorily the ruling of the trial Judge upon the probative force of the evidence, is not an easy one.

We think it quite clear that the defendant proved with reasonable certainty that he and those under whom he claims were in possession of the S. E.$\frac{1}{4}$ of the S. E.$\frac{1}{4}$ of Section 13, Tp. 5, R. 13 N. & W., for more than four years before the institution of this suit under a tax deed to T. C. Adams, dated the 13th of July, 1901. Adams testified that he went into the possesion of this land two or three months after he received the tax deed, and repaired the fencing and the house. There were no crops grown on the open land that year, but he rented the land the next year, 1902, to Mr. Horne, who raised a crop on it. The next year, 1903, he rented it to Mr. Eldredge and a crop was raised on the land. Mr. Rhodes has used it for farming purposes ever since he bought it of the witness. The

deed from T. C. Adams and wife is dated 31st of October, 1903.

Mr. Rhodes, the defendant, testified that he raised a crop on this land in 1904, and has cultivated it right on until the time he testified. This suit was brought more than four years after possession was taken by Adams. When the tax deed was offered in evidence the record shows that the plaintiff "objected and offered to introduce the tax roll. The court thereupon ruled that the plaintiff could do that and move to strike." The plaintiff afterwards introduced the assessment roll for Jackson County for the year 1908, which shows that this land was assessed to "P. P. Johnson's heirs." The plaintiff then moved to strike the tax deed, because the land was not assessed to "the owner or occupant", because the tax deed does not show on its face the number of the certificate under which it was issued, nor recite that it was filed in the Clerk's office, and because the statute sought to be availed of was a special statute and must be pleaded.

The plaintiffs in error admit that the case of Ropes v. Minshew, 47 Fla. 212, 36 South Rep. 579, settles the question against them that a motion to strike the tax deed was not the proper method of raising the questions presented. But it will be observed that the trial judge when objection was made to the introduction of the tax deed observed that this practice might be followed.

The twenty-third assignment of error presents the question that the court erred in not excluding the tax deed from the evidence. The only argument presented by the brief in support of this assignment is that the assessment to P. P. Johnson's heirs was void under the decision of L'Engle v. Wilson, 21 Fla. 461. It is only necessary to observe that the tax deed follows the form found on page 224 Revised Statutes of 1892, and that this suit was not

brought until after the expiration of four years from the time the purchaser of the tax title went into possession, and that this suit as to the land embraced in the tax title was barred under the decision in Florida Finance Co. v. Sheffield, 56 Fla. 285, 48 South. Rep. 42. As no other question is presented in the brief under this assignment, it is not sustained.

We will next take up the question of the evidence as to the adverse possession by the defendant of the other land embraced in this suit for seven years under color of title before this suit was brought.

The first instrument upon which the defendant relies is a deed of the Sheriff of Jackson County, Jas. A. Finlayson, to A. D. McKinnon, dated March 14th, 1898. The second instrument to support color of title is a deed from A. D. McKinnon and wife to S. W. Wilson and Eva P. Everett, dated October 19th, 1899. The third instrument to support color of title in defendant is a deed from Wilson and wife and Eva P. Everett to Margaret M. Nichols dated 13th of December, 1902, and the fourth instrument relied on to support color of title in defendant is the deed of Margaret Nichols and her husband, John Nichols, to the defendant dated 10th of October, 1903. The deed from Sheriff Finlayson to McKinnon was objected to when offered in evidence, because it was not recorded, and because the judgment and execution on which it was based were not produced in evidence. When offered by the defendant it was stated that it was only offered as color of title, and no authority is shown by the plaintiffs in error why the deed alone was not sufficient for such a purpose, in view of the decision in Kendrick v. Latham, 25 Fla. 819, 6 South Rep. 871. This disposes of the fifth assignment of error.

There is no assignment of error based on the admission

15—Vol. 62

in evidence of either of the other deeds introduced by the defendant in support of his color of title. We will now address ourselves to the evidence in support of possession by the defendant of the N. E.$\frac{1}{4}$ of Section 24, Tp. 5 N., R. 13 W., under his color of title. D. L. McKinnon testified for the defendant that he represented his brother at the sale of the land under the execution, and bought it for him; that his brother rented the land to a man named Davis the day the deed was made, which was the 14th of March, 1898; that the place was occupied and cultivated in 1899.

Mr. C. T. Davis testified for the defendant that he had known this land ever since it was settled; that he was living on it at the time it was sold by the Sheriff; that he knows A. D. and D. L. McKinnon; that he rented the land from Mr. McKinnon, and made a crop on it in 1899; that he left it awhile before Christmas and Mr. Everett moved straight in. He says he and his brother Henry Davis had been renting the land from Mr. Cailey, and did not move off before they rented from McKinnon; that in 1898 they leased the land from Mr. Cailey, who was the agent of Johnsons, and leased it from McKinnon in 1899; that there was no written lease.

Mr. W. R. Hayes testified for the defendant that he knew J. T. Rhodes and the land he lived on—the latter for twenty or twenty-five years; that he knew Davis who lived on the land two years; that Everett went straight on the land when Davis left it, and farmed it; that Nichols farmed it one year and Mr. Rhodes went on it within a few days after Nichols quit, and has been there ever since, up to the present time, and has been claiming the land. Nichols claimed the land as his when he was on it, and Everett did the same when he was on it; that he has lived two miles from the land for twenty or twenty-six years.

Mr. A. L. Richter testified for the defendant that he knew the defendant, Rhodes, and the place he lives on, the latter for 27 or 28 years; that he knew the witness Davis who lived on the place two years and farmed it; that after Davis, Mr. Geo. Everett lived on the place. He moved on the place the same fall the Davis Brothers moved off, and farmed it; that John Nichols lived on the place one year after Everett, and farmed it, and that Mr. Rhodes lived on the land after Nichols lived there, and has been living there ever since, and claimed the land as his; that the place was reputed to be McKinnon's "along the last days" Davis was on it.

Mr. Rhodes testified on his own behalf that he had known the land involved in this suit about eight years; that it has been in cultivation ever since he knew it, about 160 acres; that there is a dwelling house on it, and a little barn; that he moved on the land the last of December, 1903; that John Nichols was on the place and moved out in the morning and witness moved in that night; and that he, witness, got a deed from John Nichols.

The foregoing is the substance of defendant's evidence as to possession.

The evidence of the plaintiffs bearing on the question of the possession of this land was in substance, as follows:

Seth Johnson testified that he knew the S. E.¼ of S. E.¼ of Section 13, took charge of it himself, for himself and other heirs of P. P. Johnson; that he rented it to a man named Cawthon in 1893 and 1894, and collected the rents; that Cawthon was there under his father and witness let him stay; that his father died in September, 1893; that as to the N. E.¼ of Section 24—5—13, about sixty acres were fenced; that he continued in charge of it until 1898, and this statement he repeats; that he was ousted by D. L. McKinnon—"the sheriff—supposed to be the sheriff's exe-

cution;" that he does not remember exactly the yearly rentals nor how much he collected. Some years more than $125.00, according to the cotton made; that witness lived in Alabama, and put Cawthon in charge; that his father put him there in 1892. "Yes sir, I continued there until 1894." He (Cawthon) had about 6 acres enclosed. "Not very much;" there were no buildings on it; that he had as an improvement a "little old rail fence;" that Cawthon was there two or three seasons, and then a man named Davis; that "it has been a long time ago;" that he did not know who was on the 160 acres in 1895; that he does not believe he went there in the fall of 1898; that he could not be positive, but he thinks Davis was there in 1897; that "as. to whether I put him on the last of the year in which I was ousted,. well, I don't know; I don't think he had his rent and that ousted him in 1898. No, I don't know who was there in the Spring of 1898. I think he might have gone out in the Spring of 1898.......No, sir; the Davis Brothers did not pay me any rent in 1899."

Mr. J. E. Cailey testified for the plaintiffs in substance as follows: That he knew the land known as the Cawthon place; it is in Section 24, Tp. 5, R. 13; that he was in charge of the place for P. P. Johnson's estate in 1896-1897—and 1898, with possession; that he made his report to Seth Johnson; that he leased the land in these three years; that he collected the rents for it of Davis $150.00 a year; that the whole place consisted of 200 acres; that Davis was on the place in 1898—Davis Brothers; McKinnon got his deed under the execution sale in 1898 or 1899; that he did not rent it any more after that.

The foregoing presents the substance of all the evidence of possession of the 160 acres embraced in the Sheriff's deed to McKinnon after the execution of that deed, to-wit, 14th of March, 1898. It seems to us that it

shows a very clear case of continuous adverse possession by defendant, Rhodes, and those under whom he holds for more than seven years before the bringing of this suit on the 11th of July, 1906. Seth Johnson admits that he was ousted by this sale and conveyance, and his agent Cailey, who had charge of the property, states positively that he did not rent it after 1898. Davis was on the place as a tenant of Seth Johnson or Cailey in 1898, but his relation as a tenant to Seth Johnson seems clearly to have ceased in 1898, and it is clear that he rented from McKinnon for the year 1899. We can discover no error committed by the Circuit Judge in giving the affirmative charge for the defendant and the judgment must be confirmed unless some fatal error is discovered under some other assignment of error.

The first assignment of error is that the court erred in admitting in evidence the deed of George T. Everett, Eva P. Everett, Sarah V. Wilson, to Margaret M. Nichols, over plaintiff's objection. The objections to the introduction of this made by the plaintiffs as shown by the record, are: 1st. That the deed was not recorded until the 20th of June, 1910, after the institution of the suit. 2nd. That it is not shown that the people who made the deed were in possession at the time the deed was made. The date of the deed is 13th December, 1902. The testimony shows that Everett lived on the place four years; that he was on the place just before Nichols moved on it, and that Nichols succeeded Everett in the possession of the property; that Nichols moved there about Christmas time; that George Everett's family was on the land and farmed it all the time after they bought it. C. T. Adams testified for the defendant that George Everett went on the land immediately after Davis; that Everett farmed it four years; that John Nichols went on it after Everett and farmed it

one year.  Joe Jowers, a witness for the defendant, testified that Everett made four crops on the land, and that John Nichols moved on it after he got it; that he lived there and made a crop.  The evidence of A. L. Richter is to the same effect.  The evidence of the defendant shows an unbroken continuity of possession in these parties under whom the defendant claims, including defendant's possession from at least the first of 1899, to the time the case was tried.  There is nothing in the evidence to the contrary.  The only argument to sustain this assignment is that there is some inconsistency in Davis' testimony as to when he rented from McKinnon, but we think a careful examination of the whole testimony of Davis shows no essential conflict or inconsistency.  He stated plainly two or three times that he rented the land two years, one year, 1898, from Mr. Cailey, the agent of plaintiffs, and the next year, 1899, from McKinnon.  There is no other question presented under this assignment, and we do nto think it is sustained.

The second assignment is based on the action of the court in overruling plaintiffs' objection to the following question propounded to the defendant:  "Everett and Wilson were on the land, who was reputed to be the owner at that time?"  No authority is cited to sustain this assignment.  Where a defendant is claiming title by adverse possession, it seems that reputation of ownership may be given in evidence.  Maxwell Land Grant Co. v. Dawson, 151 U. S. 586, text 603, 14 Sup. Ct. Rep. 458.

The third assignment is based on the action of the trial judge in sustaining the defendant's objection to the following question propounded to defendant on cross-examination:  "I notice your deed is recorded June 20th, 1910, why did you keep them off the record until then?"  The plaintiff stated after the court had ruled that the object

of the question was to test the good faith of the defendant as the proof is clear that the defendant had been in actual open possession of the property for several years, the plaintiff had notice of his claim of ownership. He was not required by law to record his deeds, and we do not see how the question would have afforded any test of the good faith of the defendant. The question seems to have been a fishing one. No authority is cited to sustain the assign-ment, and we perceive no reason why it should be sus-tained.

The fourth assignment is based on the following facts: The defendant had stated that he lived in Alabama when he traded with Nichols for the land in dispute; that he was in Campbellton when the deed was made. The record then states that the plaintiffs propounded to the witness (defendant) the following question: "Mr. Nichols had been run off by prosecution," but to this question the defendant then and there objected, which objection the court then and there sustained. This action is assigned as error. It is not clear from the record that this asser-tion on the part of the plaintiffs was regarded by the court as a question, but if it was intended as a question, we discover no error in the action of the judge. The judge stated to the plaintiffs that "you can ask the witness where John Nichols was........ If he had left the coun-try you can prove it." Moreover, the deed to the land was made to Margaret M. Nichols, the wife of John Nichols, and there is undisputed proof that John Nichols' family moved on the place when it was deeded to Margaret, and remained there until it was sold and conveyed by herself and husband to T. J. Rhodes, the defendant. Whether John Nichols was run off by a prosecution seems imma-terial to the question of the continued adverse possession.

The fifteenth assignment of error is as follows: "The

court erred in admitting and in refusing to strike the testimony of defendant's witness C. T. Davis, that he had attorned to a new landlord, A. D. McKinnon, without surrendering to his former landlord, the plaintiff." The record does not show there was any objection to the testimony in chief of the witness Davis. He had testified to a num ber of.facts in his examination in chief, among other things, that he was living on the place at the time of the sheriff's sale, and continued to live on it every day about a year after the sheriff's sale; that he did not rent the land from Cailey, who was the agent of plaintiffs, in 1899, but from McKinnon; that Everitt moved right in after he moved out. The record then shows that on cross-examination the witness stated "We did not move off after we rented from Cailey and before we rented from McKinnon. We never did move. No, sir; we never did move until (the) last year." "Whereupon the plaintiffs by their attorneys moved the court to strike the testimony of this witness upon the ground that he cannot attorn to a new landlord without moving off; he cannot attorn to a new landlord without surrendering to the landlord under whom he is holding, which motion the judge then and there denied, to which ruling the plaintiffs then and there excepted." The motion to strike covered the whole testimony of the witness, much of which was unchallenged evidence. Under the decisions of this court the motion for this reason was properly refused.

The seventeenth, eighteenth and nineteenth assignments are based on the refusal of the judge to permit plaintiffs to ask their witness Cailey the following questions: "Did they (Davis Brothers) surrender back to you possession of the place?" "You say you sued him? Davis, for rent of 1899?" "I will ask you if you took any steps to collect it? the rent of 1899?"

Mr. Cailey had already testified in chief for the plaintiffs that he was in charge of the Seth Johnson estate for the years 1896, 1897 and 1898, "with possession;" that he leased the land on those three years to Davis for $150.00 per year, that he rented the land to Henry Davis one year, and to Davis Brothers one year; that Davis Brothers were on the place in 1898; that he did not rent the land any more after the time McKinnon got his deed. Mr. Seth Johnson had stated on his examination in chief that he was ousted by the sale to McKinnon. The foregoing and a.number of other questions were asked this witness on recall or rebuttal that may have produced the impression on the mind of the Circuit Judge that they were intended to elicit testimony in conflict with his testimony in chief—without any explanation which would have avoided such a conclusion. These questions were all propounded to Mr. Cailey, who was recalled after the defendant had rested his case. Whether he was recalled in rebuttal or in chief does not affirmatively appear from the record. None of the questions tended to elicit answers in rebuttal of any evidence of the defendant. They only tended to contradict what had been said by Mr. Johnson and Mr. Cailey on their examination in chief by the plaintiffs or tended to elicit new evidence which should have been introduced by the plaintiffs in chief. It has been repeatedly held that the order of the introduction of testimony rests in the discretion of the trial judge, and that the exercise of such a discretion will not be disturbed unless it is apparent there has been an abuse of it. This applies to the opening of the plaintiffs' case for the introduction of new evidence not in rebuttal, and to the recall of a witness for re-direct examination. 3 Wigmore on evidence, Secs. 1873 and 1876, and cases cited under each section. The trial judge's discretion in such cases

has been recognized by this court in a number of cases. Charles v. State, 58 Fla. 17, 50 South Rep. 419; Jacksonville T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla. 1, 9 South Rep. 661, and the large number of cases cited on pp. 664-5-6, Wurts' Fla. Dig., 1910.

In Cushing v. Billings, 2 Cush. (Mass.) 158-9, cited in Wigmore *supra,* Chief Justice SHAW says: "We take it to be well settled that the order in which witnesses shall be called is a matter of discretion with the court. The orderly course of proceeding requires the party whose business it is to go forward, should bring out the strength of his proof in the first instance; but it is competent for the judge, according to the nature of the case, to allow a party who has closed his case to introduce further evidence. This depends upon the circumstances of each particular case, and falls within the absolute discretion of the judge, to be exercised or not, as he may think proper." See, also, the case of Hathaway v. Hemingway, 20 Conn. 191, text 195, cited by Wigmore, where the rule is more elaborately stated. We do not go so far as to say that the discretion of the trial judge is an absolute one, which can not be reviewed, but certainly where a review is asked for, it should be made to appear that there has been an abuse of discretion.

What has been said above applies to the twentieth and twenty-first assignments of error. The plaintiffs having recalled Mr. Cailey, their agent, who had the renting of the land, endeavored to prove by him that he brought a suit and recovered a judgment against Davis Brothers for the rent of the land for 1899. This was offered, it is said in the brief, in rebuttal. But Cailey had stated in his examination in chief, as we have said before, that he did not rent the land in 1899, nor after 1898, and this evidence

was offered without any explanation whatever, and would have been a flat contradiction by the witness of his own previous statement.    Nor does Mr. Seth Johnson claim that he rented the land to Davis Brothers in 1898.    The defendant founded his defense on these plain statements and admissions of the plaintiffs and their witnesses, and closed his case.    Under these circumstances we do not perceive any abuse of discretion in the trial judge.    These remarks apply to the twenty-second assignment of error.

No error was committed in refusing the motion of the plaintiffs to strike a sentence from the testimony of defendant's witness Jowers.    Part at least of this answer was competent, and the assignment fails.

The twenty-fourth assignment is based on the refusal of the court to permit the plaintiffs to read in evidence the execution on which the sheriff's deed was based.    The plaintiffs' purpose was to show that the deed wais void. But as the deed was only offered as color of title, we discover no error in this action of the judge.

The twenty-sixth assignment is based on the action of the court in refusing a motion by the plaintiffs after the case was closed and the affirmative charge had been given for the defendant, to re-open the case in order that plaintiffs might show that the ancestors of the minor heirs died in August, 1898, which plaintiffs then proffered to do.    The cases relied on to sustain this assignment are Walker v. Redding, 40 Fla. 124, 23 South. Rep. 565; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 231; Laflin v. Gato, 52 Fla. 529, 42 South Rep. 387.    These are all chancery cases, and infants are peculiarly protected in such cases.    The proceedings in chancery are much more flexible than those at law.    The offer of the plaintiffs was not definite and specific.    The minors may have had ancestors who died in August, 1898, who were then in no way inter-

ested in the land in dispute. What we have said about the discretion of the trial judge in such cases applies to this assignment. See opinion in Armstrong v. Wilcox, 57 Fla. 30, 49 South. Rep. 41.

The twenty-fifth assignment raises the question of error on the part of the court in giving the affirmative charge for the defendant before argument to the jury. The record does not show that any demand for an argument was made by the plaintiffs, nor does the record show that this was a specific ground of objection to the peremptory charge. This action of the judge was irregular in this respect (see Sec. 1496 Gen. Stats. 1906), but in view of the facts as they appear in the record we do not think the irregularity is one which should cause a reversal of the judgment.

There are a number of other assignments, based on remarke made by the judge to the attorney for the plaintiffs during the course of the trial, but as we think the evidence warranted a peremptory charge for the defendant, it is unnecessary to consider them.

The judgment of the Circuit Court is affirmed.

TAYLOR and PARKHILL, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.