John J. Harrison, Ruel H. Thiot et al., *Appellants*, v. Mollie Speer, Joined by Her Husband, W. L. Speer, as Next Friend, *Appellee.*

Division A.

Opinion Filed November 21, 1927.

Petition for Rehearing Denied January 10, 1928.

*Giles & Gurney, Palmer & Dickenson,* for Appellant;

*Dickinson & Dickinson,* for Appellee.

Brown, J.—This was a bill filed by Mrs. Mollie Speer, joined by her husband as next friend, to quiet title to cer-

tain real estate in Orlando, Florida. The suit was defended by Mrs. Ruel Thiot. It appears that J. A. Peters in his lifetime owned a plot of land thirty-five feet wide on West Church street, Orlando, Florida, and John J. Harrison had purchased another plot just west of the Peters' lot and fronting sixty-seven feet on the same street. Harrison married Peters' daughter in 1886. He went away in 1887 or 1888 and never returned. There was some evidence tending to show that he had died shortly after leaving. He left a wife and two children, one of them being the defendant, Mrs. Ruel Thiot, and the other a son who died in infancy. Shortly after this, in 1890, Mr. J. A. Peters died, and his widow took the two houses on the adjoining lots above mentioned and moved and joined them together, in 1890 or 1891. The two lots were enclosed with a fence extending entirely around the property, and that fence was maintained until some seven or eight years prior to the bringing of the suit in this cause. Mrs. Peters resided on the property and paid the taxes thereon until her death in 1923, and by specific description willed the property to her daughter, Mrs. Mollie Speer, who, though she had a family of her own, had lived with her mother and looked after her during all these years. Mrs. Speer based her claim of title upon the alleged title by adverse possession of her mother up to the time of her death, after which time Mrs. Speer continued to reside on the property, claiming the same under her mother's will. Mrs. Peters had no paper title.

Shortly after her husband's death in 1890, Mrs. Peters paid off a mortgage given by John J. Harrison, covering the lot which Harrison had purchased as above stated, and the deed which had been made out to Harrison, together with the mortgage, was delivered to her. It will thus be noted that for a period of about thirty-two years Mrs.

Peters occupied this property, and there was evidence
before the chancellor to the effect that during this period
she was in complete possession of both lots, occupying
them as her home, the house resting partly on both, and
cultivating flowers and shrubs, and raising chickens and
otherwise exercising possession of the entire property, in-
cluding the lot in question. In fact, it may be said that
the evidence was quite strong to the effect that Mrs.
Peters claimed to be in possession of the property as
owner and that she had the reputation in that vicinity
of being the owner of the property. There was, however,
some rather vague evidence by a son of Mrs. Peters and
his wife to the effect that there was a general understand-
ing, soon after his father's death, that his mother should
be allowed to live on and retain possession of the property
as long as she lived. Mrs. Thiot, who was then but a child,
testified that she was afterward told by members of the
family that this was the understanding and she therefore
made no effort to assert her title. Mrs. Thiot was born in
1886 and was, therefore, thirty-eight years old when the
bill was filed, seventeen years after she became twenty-
one. Some two years after Harrison had disappeared,
Mrs. Harrison obtained a divorce and married again, and
shortly thereafter moved to Tampa, taking with her her
daughter Ruel. So Mrs. Thiot had lived in Tampa from
early in life until this bill was filed, occasionally visiting
her grandmother, Mrs. Peters, during her lifetime. She
testified that she had never had any knowledge that her
grandmother was claiming to be the owner of the lot in
question.

The testimony was taken before a master, and upon
final hearing the chancellor rendered a decree in favor of
the complainant and adjudicated her to be the fee simple

owner of the property involved. From this decree, this appeal was taken.

It is contended by appellants that certain evidence offered in behalf of complainant upon the issue of adverse possession was illegal, and further that general proof of adverse possession on the part of Mrs. Peters would not be sufficient to establish title in her in the absence of actual notice of such adverse claim being brought home to appellant, Mrs. Thiot, who did not live in that vicinity, but more than a hundred miles away. There is also some contention that Mrs. Speer was claiming to hold adversely under the mortgage which her mother had paid off, but we do not find this contention to be sustained by the weight of the evidence. It appears that Mrs. Peters paid off the mortgage and thereafter claimed to be the owner of the property. It is quite possible that the fact that the deed which had been made out to Harrison was delivered to her, in connection with her paying the balance secured by the mortgage, and the further evidence that she had the houses moved together and completed, may have, and probably did, cause Mrs. Peters to get the idea that she thereby became the sole owner of the property. However, the weight of the evidence was merely to the effect that threafter she claimed to be the owner without stating the basis for such claim.

Appellant cites the case of Woods v. Montevallo Coal & Transp. Co., 84 Ala. 560, 3 So. 475, 5 Am. St. Rep. 393, in which the following language is used: ''Existence of a fact cannot be proved by reputation or notoriety, but when the fact is otherwise established, its general notoriety may be shown to charge a person in the neighborhood with knowledge of it.'' This appears to be the only authority

cited to support the contention of appellant that unless the appellant lived in the same community with Mrs. Peters, the latter's general reputation as being the owner of the property and the general notoriety in the vicinity that she claimed possession as owner, could not affect the rights of the appellant. This construction of the language used in the above cited case is not in line with the general weight of authority and indicates an erroneous construction thereof. In 2 C. J., p. 77, Sec. 59, it is said:

"In the absence of some special statutory provision to the contrary, in order to perfect title by adverse possession it is not necessary that the true owner should have had actual knowledge or notice of the claim. If the claimant's possession is open and notorious under claim of title it is sufficient in its character, whether the true owner knew the facts or not. The claimant need not otherwise repudiate the title of others claiming the land, or notify them of his claim of title. On open, visible, and notorious possession by the adverse claimant the law presumes notice to the true owner in the absence of evidence that inquiries of the true owner, prosecuted with due diligence, did not disclose such possession. Such possession is the equivalent of actual notice of the claim under which it is held, and if the owner fails to look after his interests until the title of the adverse claimant grows into maturity he has no one but himself to blame for the loss of his estate. Where the possession is notorious no declaration of abandonment of possession on the part of the owner is necessary in order that his title may be barred."

It will be observed from the number of authorities cited in support of the above paragraph that this statement of the law is supported by the weight of authority in this country. This rule does not apply in some cases where

the relationship between the parties is that of trustee and *cestui que trust,* or parent and child, in which a different doctrine obtains. See 2 C. J. 156, 158.

Notoriety of possession by one setting up title by adverse possession may be shown by testimony that in the vicinity of the land in question he was reputed to be the owner. 2 C. J. 269, Sec. 600, and cases cited. In the case of Maxwell Land Grant Co. v. Dawson, 151 U. S. 586, 38 L. Ed. 279, it was held that, upon the question of adverse possession of land, testimony that the land claimed was generally reputed to belong to the claimant, was admissible. In Johnson v. Rhodes, 62 Fla. 220, 56 So. 439, this Court held that, where a defendant is claiming title to land by adverse possession, reputation of ownership may be given in evidence.

It is also quite generally held that the declarations of one in actual possession of land, showing that he claims to be the sole owner, are admissible as tending to show hostility of possession. Such declarations are part of the *res gestae* of possession, and are not objectionable as being self-serving declarations. 2 C. J. 269, Sec. 603, and numerous cases cited. In the case of Woods v. Montevallo Coal & Transp. Co., *supra,* cited by appellant, it was also held that it is admissible, in order to sustain title by adverse possession, to ask a witness whether it was not generally known in the vicinity of the land that defendant's grantor claimed title.

It is true that there is some conflict in the evidence in this case, but there was a considerable amount of credible testimony introduced before the master and submitted to the chancellor to form a reasonable basis for the conclusions reached by him in his final decree, and we cannot say that such conclusions were clearly erroneous. It there-

fore follows, under the rule long established in this jurisdiction, that the decree appealed from should be affirmed.

Affirmed.

Ellis, C. J., and Strum, J., concur.

Whitfield, P. J., and Terrell and Buford, J. J., concur in the opinion.