**D'FERRO et al. v. AMERICAN OIL CO.**

No. 14231.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1953.

Henry Tolbert Black, Lake City, Fla., for appellants.

Edward McCarthy, Jacksonville, Fla., McCarthy, Lane & Adams, Jacksonville, Fla., of counsel, for appellee.

Before BORAH, RUSSELL, and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a judgment ordering specific performance of a contract to convey real estate in a suit in which appellant Frank J. Appell intervened on the ground that he had acquired title to a portion of the realty by adverse possession.

The claim of the intervener presents the sole question for decision.

Appellee, The American Oil Company, instituted this action in the United States District Court for the Southern District of Florida seeking specific performance of an option to purchase realty in accordance with the provisions of a written lease which was executed in the year 1931 by and between appellee's predecessor in interest, Pan American Petroleum Corporation, and the lessor-owner, Stella D'Ferro. The option granted was to purchase real estate in Lake City, Florida, more specifically described as the southeast corner of the south one hundred feet of Lot or Block Number 77 of the Northern Division of the City of Lake City. The north 25 feet of this lot, improved by a brick building measuring about 24 feet two inches long by 19 feet nine inches in width, constitutes that portion of the property which is in dispute. When the lease was executed Pan American Petroleum Corporation leased back to Stella D'Ferro that portion of the lot in controversy which was occupied by the brick building. This lease was for a term or period identical with the ten year term of the first mentioned lease and the parties agreed that if Pan American Petroleum Corporation elected to exercise its option to purchase in accordance with the provisions of the first lease, Stella D'Ferro would surrender and quit the premises in their entirety and remove the lunch stand building therefrom. Under these conditions, the lessee corporation entered into possession of the property, with the exception of the lunch room building. Thereafter, it erected a gasoline station which it operated until November, 1933, at which time it assigned to appellee the lease first mentioned "with all and singular the premises therein mentioned and described and the structures thereon, together with all rights, privileges and appurtenances connected therewith." Following which appellee went into possession of the premises under the aforesaid lease and assignment and has continuously remained in possession thereof since November 1, 1933. In September, 1934, Stella D'Ferro died intestate leaving as her only heirs Ursula D'Ferro, a daughter, and Ferra Appell, a granddaughter. Prior to the expiration of the lease, the heirs and appellee agreed to renew the lease for an additional five year period and in the year 1946 the lease was again renewed and extended for an additional period of five years. This latter agreement expressly provided that all other terms, covenants and agreements contained in the original lease should continue in full force and effect during the renewal period.

On or about March 12, 1951, while the extended and renewed lease was in full force and effect, appellee gave due notice of the exercise of its option to purchase the property and improvements thereon at the agreed price of $10,000. The heirs refused to abide by the terms of the contract and convey the property for reasons which are not here material and as a result this suit for specific performance was brought to compel compliance. Thereafter, Frank J. Appell filed a motion for leave to intervene as a defendant on the ground that he was the fee simple owner and occupant of the north 25 feet of the lot and the lunch room building thereon.

The motion of the intervener recites that on May 9, 1931, W. Lankstead and Joe Johnson, partners, trading and doing business under the style and firm name of Johnson Lumber Company, conveyed the building in question to movant by warranty deed;[1] that subsequent thereto, and at all times up to and including the present date, movant has occupied the premises personally or by rentors or tenants and has exercised full dominion over the premises as described in the deed together with the adjacent property described in his claim. Further, that movant collected rent upon the premises, utilized the property, paid

[1]. The deed purports to convey title only to the following "goods and chattels":
"That certain One story brick building now located on the South one hundred feet of lot or Block #77, in the northern Division of the City of Lake City, Florida, and being more particularly described as a red brick building located as aforesaid and fitted and constructed for the Lunch room business."

taxes thereon, and for a period in excess of twenty years has held out to the world exclusive, adverse and notorious possession as against all persons whomsoever. Finally, that movant has been in actual, open, notorious, and adverse possession of the premises for a full and complete period of seven years in accordance with the statutory requirements of the State of Florida, and that his possession was with the full knowledge of appellee and its assignors, with no protests or objection on their part, and with full acquiescence and recognition of movant's title. This motion to intervene was granted and after a trial the court made appropriate findings of fact and concluded as a matter of law that appellee was entitled to the relief sought; that the intervener had no title, interest or estate in any part of the lands in question, either by purchase, adverse possession with color of title, or adverse possession without color of title, or otherwise; and that intervener was entitled to no relief. On the basis of these findings and conclusions of law the court entered its judgment for specific performance on the contract and from this judgment Ursula D'Ferro, Ferra Appell and Frank J. Appell, intervener, have appealed.

On this appeal the intervener alone complains of the judgment below and the controlling question here presented is whether or not the intervener acquired title to the property in dispute by adverse possession.

The undisputed facts are these. Frank J. Appell, intervener, was a son-in-law of the late Stella D'Ferro and is the brother-in-law of Ursula D'Ferro and the father of Ferra Appell. At the time of her grandmother's death in 1934, Ferra Appell was a minor and did not attain her majority until the year 1941. All of the persons named were members of the same household and lived as one family in their home in Lake City, Florida, at all times herein mentioned until the death of Stella D'Ferro in September, 1934, and since that date the survivors have continued to live together in the same home as members of one family. On or prior to May 1, 1931, intervener obtained a deed to the lunch room building by paying a $150.00 claim of Lankstead and Johnson for work done in the construction of the building and since that date intervener has collected rent from various tenants who occupied the building. However, and though living under the same roof with Stella and Ursula D'Ferro and his daughter, appellant gave no notice to any of these members of his household that he was claiming title adversely to any of them, and this is confirmed by his admission that he had never mentioned that he had a deed. During the long period of his occupancy of the building, intervener paid no taxes on the land and such tax payments as were made by him were on the building only. We agree with the District Court that the evidence is not sufficient to support a claim of adverse possession.

Under the law of Florida, the rule of evidence applicable to a claim of title by adverse possession with or without color of title requires a high degree of certainty in the proof offered as to the actuality, continuity, and publicity of the possession and its character as openly and notoriously adverse to the record owner of the title. Atlantic Coast Line R. Co. v. Seward, 112 Fla. 326, 150 So. 257. Here, no notice of intervener's claim was brought home to the record owners and there is no basis for a presumption that his possession was the equivalent of notice or that such possession was adverse, since there is here a family relation that account for his occupancy of the premises. Mullan v. Bank of Pasco County, 101 Fla. 1097, 133 So. 323; Harrison v. Speer, 94 Fla. 937, 942, 114 So. 515; Frazier v. Morris, 161 Ky. 72, 170 S.W. 496. Indeed, every presumption favors possession in subordination to the title of the true owner. Section 95.13, F.S.A.; cf. Palmer v. Greene, 159 Fla. 174, 31 So.2d 706. Nor is there anything unusual in the circumstance that Stella and Ursula D'Ferro and appellant's daughter permitted him to occupy the building and hold possession under them for an indefinite period of time without requiring an accounting for its use and rents, and it would be sanctioning a rather harsh doctrine for us to say that the price of indulgence is

forfeiture of their right of property in the building and lands in question. This we are unwilling to do in the absence of a showing of a clear, positive and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owners a sufficient length of time to bar them under the statute of limitations from asserting their rights. Mullan v. Bank of Pasco County, supra. No such showing was here made.

The intervener contends that although his daughter, Ferra Appell, attained her majority in the year 1941 she has never taken any action to enforce her claim to the property and is now barred from doing so. Similarly and impliedly advancing a like contention, he points to the fact that Ursula D'Ferro was at all times sui juris. This argument in favor of his right to prescribe adversely to the members of his family due to their failure to take action against him overlooks the fact that they had no knowledge and notice of the adverse claim to the title and the facts and circumstances upon which said adverse claim is based. Nor is there any merit in the attempt upon the part of the intervener to establish his claimed adverse holding by proof of statements made by these parties. Neither the intervener nor his co-appellants have undertaken to explain how it was that the legal title was held by his daughter and sister-in-law, and no proof was produced of open acts of renunciation and hostility to their title. Furthermore, neither Ursula D'Ferro nor Ferra Appell unequivocally denied any interest in the land.[2] It would require unusually clear and convincing proof of a hostile holding under these circumstances to set in motion the statute as against the legal title holders; and such

proof is not forthcoming in the record here presented.

The judgment was right and it is Affirmed.

---

2. The deposition of Ursula D'Ferro which is in evidence recites in pertinent part:
    "Q. And you never heard of his having a deed to the land, did you? A. No.
    "Q. After your ownership vested in 1934 upon the death of your mother, you continued to pay taxes on the land that that lunchroom building was on, did you not? A. Yes."
    Ferra Appell likewise testified by deposition:

    "Q. Now, do you mean you didn't have any interest in the building? A. No interest in the profits received from it—rentals.
    "Q. But you don't mean to say that you never had any interest in the land on which that lunchroom stands? A. Well, if that is included in the land, where the filling station is—we own that property."