NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MICHAEL BATTERBEE,                      )
                                        )
            Appellant,                  )
                                        )
v.                                      )          Case No. 2D18-2037
                                        )
MERRI L. RODERICK, as trustee for the)
Wilma L. Hinkley Trust,                 )
                                        )
            Appellee.                   )
_____ )

Opinion filed August 30, 2019.

Appeal from the Circuit Court for
Highlands County; Larry Helms, Judge.

Clifford R. Rhoades of Clifford R.
Rhoades, P.A., Sebring, for Appellant.

James V. Lobozzo, Jr., of James V.
Lobozzo, Jr., Sebring, for Appellee.


NORTHCUTT, Judge.

        Michael Batterbee filed suit against Merri Roderick, trustee of the Wylma

L. Hinkley Trust, seeking to quiet title to real property based on a claim of adverse

possession.  Following a bench trial, the trial court rejected the claim, holding that

Batterbee failed to prove that he and his predecessors in interest had held the property

in a hostile manner for the requisite statutory period.  We disagree and reverse.

The material facts are largely undisputed. At issue is a mobile home and its associated plot in a mobile home park in Sebring, Florida. In 1993 the owner of the property, Wylma Hinkley, transferred it to the Wylma L. Hinkley Trust, for which she served as trustee. In 2008 she asked her son, Scott Hinkley, to move into the home. Scott and his then-girlfriend, Suzann Batterbee, then took exclusive possession. In 2009, shortly after Scott and Suzann were married, Wylma executed a quitclaim deed conveying the property to Scott. Scott also signed the deed. As written, however, the deed did not state that Wylma executed it in her capacity as trustee of the trust that owned the property. Wylma died in 2011, whereupon Scott's sister, Merri Roderick, succeeded Wylma as trustee of the trust.

The parties agree that the 2009 deed conveying the property to Scott without reference to Wylma's capacity as trustee was legally ineffective. The evidence suggests that no one was aware of that problem. The trial court found that Scott took delivery of the deed in good faith. Scott recorded the deed, and he and Suzann lived on the property openly and exclusively, improved the property, and paid all applicable taxes; they possessed the property as if they were its true owners.

When Scott and Suzann began divorce proceedings in 2014, they both listed the home as an asset on their financial affidavits. At some point during the divorce, Merri first learned that Scott and Suzann claimed to own the property. In response to this discovery, in 2015 Merri recorded a corrective quitclaim deed purporting to convey the property back to the trust. Apparently, the court hearing Scott and Suzann's divorce was unaware of Merri's deed; its 2016 final judgment dissolving the marriage awarded the property to Suzann. She continued to occupy the property

- 2 -

until later that year, when she died.  Upon Suzann's death, her interest in the property passed to her brothers, Michael and Dennis Batterbee.  Dennis then conveyed his interest to Michael, the appellant here.

Section 95.16(1), Florida Statutes (2016), provides that

[w]hen the occupant, or those under whom the occupant claims, entered into possession of real property under a claim of title exclusive of any other right, founding the claim on a written instrument as being a conveyance of the property, or on a decree or judgment, and has for 7 years been in continued possession of the property included in the instrument, decree, or judgment, the property is held adversely.

To support an adverse possession claim, "the possession must have been for the full statutory period [of seven years], under claim of right or color of title, and must have been actual, open, visible, notorious, continuous, and hostile to the true owner and to the world at large."  Douglass v. Aldridge, 105 So. 145, 146 (Fla. 1925).  The only element at issue in this appeal is hostility.

The trial court concluded that Michael failed to prove that his predecessors in interest held the property in a hostile manner for the full statutory period of seven years.[1]  The court reasoned that because Scott took possession in 2008 with Wylma's permission, his possession was not hostile until Merri, as successor trustee, learned of Scott and Suzann's claim of ownership during the divorce proceedings in 2014.  Indeed, "[p]ermission to occupy the land, as given by the true title owner to the claimant, will

_____

[1]Florida law has recognized that a person claiming ownership of property through adverse possession may satisfy the durational requirement by including the previous possession of the property by his or her predecessors in interest.  See, e.g., Coogler v. Rogers, 7 So. 391, 397 (Fla. 1889); Porter v. Lorene Inv. Co., 297 So. 2d 622, 624 (Fla. 1st DCA 1974).

negate the hostility element." Herrin v. O'Hern, 275 P.3d 1231, 1234 (Wash. Ct. App. 2012); see also Turner v. Wheeler, 498 So. 2d 1039, 1042 (Fla. 1st DCA 1986) ("It is essential to a finding of adverse possession that the possessor's use not be permissive. Actual use is presumed permissive and the user has the burden to demonstrate that his use was without permission." (citations omitted)). Michael does not appear to contest the court's finding that Scott and Suzann's initial use of the property, beginning in 2008, was with Wylma's permission, and the evidence supports the trial court's finding on that point. The key issue, then, is when that permissive use ended.

"Permissive use can become adverse, but only upon clear, positive and distinct notification of the owner by the permissive user that he is claiming the property other than by permission." Turner, 498 So. 2d at 1042. Stated another way,

> [f]or a permissive use to become adverse possession there
> must be proof that the permissive user utilized the property
> in a manner inconsistent with the dedicated/permissive use,
> or, alternatively, that the permissive user notified the
> dedicator in a clear, positive and distinct way that it claimed
> title or ownership other than by dedication [or permission].

Hollywood, Inc. v. Zinkil, 403 So. 2d 528, 537 (Fla. 4th DCA 1981); see also Miller v. Anderson, 964 P.2d 365, 369 (Wash. Ct. App. 1998) ("Generally, the party claiming adverse possession bears the burden of proving that permission terminated either because (1) the claimant has asserted a hostile right, or (2) the servient estate has changed hands through death or alienation."); Herrin, 275 P.3d at 1236 ("Whether the December 1993 conveyance terminated permissive use of the farmhouse property is undisputed. It did, by operation of law. That is because permissive use cannot extend beyond ownership.").

In its commendably thorough "Findings of Fact and Conclusions of Law in

Support of Final Judgment for Defendant," the trial court cited each of the above cases concerning permissive use, but it ruled that the permissive use in this case did not end upon the attempted conveyance of the property to Scott in 2009:

> [Michael] Batterbee now seeks to convince the court that the mere execution of an invalid deed provides sufficient hostility to render the possession of the property adverse. Such an argument flies in the face of the fact that the true record owner, Wylma Hinkley as trustee of her trust[,] granted permission and authority for the possession of the property.

The court therefore seemed to conclude that the permissive use could be terminated only by the trustee's revocation of that permission. We disagree. The issue here is not whether Wylma, as trustee, revoked Scott's permission to use the property. Rather, it is whether Scott "asserted a hostile right," Miller, 964 P.2d at 369, or expressed a "clear, positive and distinct notification [to] the owner . . . that he is claiming the property other than by permission," Turner, 498 So. 2d at 1042. Clearly, he did so: He accepted delivery of and recorded a deed in the good faith belief that it conveyed ownership to him; he occupied the property, improved it, paid the taxes assessed on it, and otherwise openly treated the property as his. With hostile occupation commencing with the August 27, 2009, deed, Scott and his successors in interest had held the property adversely for more than seven years by the time Michael filed the complaint in this case on March 1, 2017.

The trial court pointed out that Merri was unaware that the property had been taken out of the trust until 2014 and therefore had no reason to object before then. But it was unnecessary for Merri to know of or suspect Scott's claim of ownership in order for his possession to be adverse and hostile. As explained above, when Scott took delivery of Wylma's deed, the requirement that he notify his grantor of the adverse

- 5 -

claim had been satisfied, and his heretofore permissive occupation ended. From then on, Scott and his successors had no duty to notify Wylma or Merri that they were possessing the property as exclusive owners. Their exclusive, open, and notorious use of the property satisfied the traditional definition of hostility and was constructive notice to Merri:

> [I]n order to perfect title by adverse possession it is not necessary that the true owner should have had actual knowledge or notice of the claim. If the claimant's possession is open and notorious under claim of title it is sufficient in its character, whether the true owner knew the facts or not. The claimant need not otherwise repudiate the title of others claiming the land, or notify them of his claim of title. . . . Such possession is the equivalent of actual notice of the claim under which it is held, and if the owner fails to look after his interests until the title of the adverse claimant grows into maturity he has no one but himself to blame for the loss of his estate.

Harrison v. Speer, 114 So. 515, 517 (Fla. 1927) (emphasis added) (quoting 2 C. J. p. 77, § 59); see also Birtley v. Fernandez Co., 392 So. 2d 291, 293 (Fla. 5th DCA 1980) ("This use was also hostile because it was inconsistent with and contrary to the use and rights of the owners of the property.").

The evidence demonstrated that Michael Batterbee and his predecessors in interest possessed the subject property in an adverse and hostile manner for the full seven-year statutory period. We therefore reverse the judgment for Roderick and remand for entry of a judgment in Batterbee's favor, quieting and vesting fee simple title to the property in him.

Reversed and remanded with instructions.


SLEET and BADALAMENTI, JJ., Concur.

- 6 -