FRED P. SERKISSIAN, *Appellant*, v. B. B. NEWMAN, *Appellee*.

Opinion Filed April 10, 1923.

1. Joint tenants, tenants in common or coparceners may have partition against their cotenants, coparceners or others interested in lands to be divided.

2. A widow who has a dower interest in real estate of her deceased husband is not a joint tenant, tenant in common nor in coparcenary with the children of the deceased. The statute gives her the privilege of taking a child's part in the estate, in which case she is counted as a child and takes an interest in fee. She becomes in such case a tenant in coparcenary with the children of her husband.

3. An election on the part of a widow to take a child's part in the estate of her deceased husband must be done by some method which does not leave the election uncertain or subject to dispute and must be done within one year from the date letters of administration or executorship are issued. When once exercised the election cannot be recalled and dower set aside. If she fails to act she is bound by her non action.

4. It is unnecessary to take any action to secure her dower, the statute confers it upon her and it becomes vested in the widow upon the husband's death.

5. Dower under the laws of Florida includes personalty of the deceased husband's estate.

An Appeal from the Circuit Court for Manatee County; George W. Whitehurst, Judge.

Decree reversed.

*John B. Singletary,* for Appellant;

*Dewey A. Dye,* for Appellee.

ELLIS, J.—This is a suit for partition of forty acres of land. The bill was brought by Benjamin B. Newman against Amy M. Serkissian and Fred P. Serkissian who was her husband. The bill was filed in October, 1919. Mrs. Serkissian was adjudicated an insane person in November, 1919, and died in December of the same year. The suit proceeded against her husband who was her sole heir at law, she having died without children.

The case as presented by the bill and answer briefly stated is as follows: George W. Newman died in February, 1904, seized in fee of the land involved in this suit. He left surviving him a widow, Laura W. Newman, who some years afterward married John S. Andress. Newman also left surviving him six children and two grand-children; they were the children of a son who had predeceased his father.

After the death of Newman his widow with the consent of the other heirs resided at the "home on the land" for several years, and agreed verbally with the complainant B. B. Newman representing his brothers and sisters and in his own behalf to elect a child's part in the estate of her husband in consideration of the transfer to her of certain articles belonging to the estate.

In December, 1908, the widow obtained letters of administration upon her deceased husband's estate. B. B. Newman obtained from his brothers and sisters and from the children of a deceased brother all their interest in the land which with his one-eighth interest vesting in him by descent gave him the ownership of an undivided seven-

eighths interest, assuming that the widow had a child's part. Sometime after the death of G. W. Newman, the time is not material, Amy Serkissian and her husband moved upon the land as tenants of Mrs. Laura Newman, and in November, 1910, obtained a conveyance from her and her husband of her interest in the land which she described as one-eighth undivided interest.

The conveyance was made to Amy Serkissian and executed by Mrs. Laura West Andress and her husband. In January, 1913, they executed to Mrs. Serkissian a quitclaim of all the right, title and interest of Mrs. Andress.

From 1910 up to the removal of Mrs. Serkissian to the Hospital, which occurred about November 19, 1919, the Serkissians occupied the lands, received the rents and profits, and in 1918, received the sum of eight hundred twleve dollars and fifty cents from the Tampa Southern Railroad Company in condemnation proceedings for a right of way through the land. Taxes on the land for the years 1912 to 1916 inclusive were paid by B. B. Newman.

F. P. Serkissian still resides upon the land.

The prayer of the bill is for an accounting for the "moneys received from the proceeds of said land" during the occupancy of it by the defendants, that the interests of the parties be determined and the defendants be decreed to be trustees for the complainant of seven-eighths of the money received from the railroad company, for a receiver to take charge of the fruit upon the place and other incomes and other relief.

The decree rendered by the Chancellor adjudged the land to belong to the complainant B. B. Newman and F. P. Serkissian, that they were tenants in common, the complainant owning an undivided seven-eighths interest and

Serkissian an undivided one-eighth that the latter inherited from his wife who took the one-eighth interest from the widow of G. W. Newman who elected to take a child's part in the estate of her husband.

It was also decreed that the defendant F. P. Serkissian pay to the complainants the sum of $894.67, the same being seven-eights of the amount with interest which was awarded to the owners of the real estate for a right of way, and the further sum of $29.49, being one-eighth of the amount of taxes with interest paid by the complainant upon the property, making a total sum of $924.16 to be paid by the defendant F. P. Serkissian to the complainant who should have a lien upon the defendant's interest for the amount. It was ordered that partition be made of the property if it could be done without prejudice to the owners. The commissioners were directed to "set off to the defendant that portion of the said real estate, or as much thereof as represents his share of the whole tract, above described, upon which, and adjacent to which an artesian well has been sunk by the said defendant, and to allot to the complainant as his seven-eights interest, so much of the land in question as to make their value equal in proportion to that share given to the defendant as his one-eighth interest, taking into account any additional value of the portion allotted to him by reason of its location and character, but not estimating or considering any artificial improvement made thereon by him; it is further ordered and decreed that any portion of said tract allotted to the said defendant by the commissioners as his share of the land shall be subject to and charged with the lien of this decree for the payment of $924.16 as hereinbefore set forth."

An attorney's fee of five hundred dollars was allowed

complainant's solicitor, one hundred dollars for the master, and ten dollars to the guardian of Mrs. Serkissian.

The defendant did not pay the complainant the sum decreed which was $924.16, within ten days, so the court appointed a special master to make sale of the defendant's one-eighth interest in the land to satisfy the decree. The order was made August 27, 1921. That order was executed, the property sold for the sum of $225.00, which after deducting costs and fees, was applied to the original indebtedness and interest, leaving a balance due of $748.46. The master's report was confirmed by order of the court, November 2, 1921. The defendant appealed from the decrees December 15, 1921.

The decree is attacked first upon the ground that the Serkissian interest was only the dower interest of Mrs. Laura Newman, because she could only have taken a child's part in the estate by making an election which should be evidenced by "some overt, open notorious act, which will make known to all who may investigate the records the fact that such election has been made by her.

If that proposition is sound, it follows, so it is contended, that Mrs. Serkissian acquired only the dower right of Mrs. Newman, which was a life interest in an undivided third of the land. Mrs. Serkissian therefore was not a joint tenant, tenant in common nor coparcener with complainant. That partition is not the appropriate remedy for obtaining an admeasurement or allotment of dower to the widow or her assigns.

This position is unassailable.

The statute provides that joint tenants, tenants in common or coparceners may have partition against their cotenants, coparceners or others interested in the lands to

be divided. Sec. 1941 Compiled Laws, 1914; Sec. 3204 Rev. Gen. Stats., 1920.

Tenants in common may have partition subject to the dower interest very likely although that point is not intended to be definitely settled. Some courts hold that property held by joint owners or cotenants consisting of a life estate and an estate in remainder may be partitioned in equity at the suit of the life tenant when the property cannot be equitably divided. See Fitts v. Craddock, 144 Ala. 437; 39 South. Rep. 506, 113 Am. St. Rep. 53.

In Virginia it has been held that where it is possible to assign to a widow her dower in real estate in specie, a court of equity has no power under its general jurisdiction to decree a sale of the real estate and against her will provide her a compensation in money in lieu of her dower. See White v. White, 16 Gratt. (Va.) 264; 30 Cyc. 180.

A widow who has a dower interest in real estate of which her husband died seized and possessed is not a joint tenant, tenant in common nor in coparcenary with the children of deceased. The statute gives her the privilege of taking a child's part, in which case she is counted as a child and takes an interest in fee, she becomes in such cases a tenant in coparcenary with the children of her husband. See Benedict v. Wilmarth, 44 Fla. 535, 35 South. Rep. 84.

Now if Mrs. Newman elected to take a child's part in her husband's estate and made that election within one year from the granting of the letters of administration, she took one-eighth undivided interest in fee simple estate, and that interest was conveyed by her deed of November 16, 1910, to Amy Serkissian.

If however there was no election to take a child's part, she conveyed by that deed only a one-third interest in the

estate for her life.    What constitutes an election upon the widow's part to take a child's interest has never been determined in this State.    The letters of administration were granted December 11, 1908.    Mrs. Newman's deed to Mrs. Serkissian in which the former's interest in the land was declared to be an undivided one-eighth interest was dated November 16, 1910.    If Mrs. Newman had not made an election prior to that date she would have been confined to her dower.    The statute does not provide how her election shall be made, but it is evident that it should be done by some method which does not leave the election uncertain or subject to dispute.    When once exercised she cannot recall it and have dower set aside.    See 9 R. C. L. 603.

If she neglects for twelve months to elect a child's part, or in case of a will devising to her a certain interest, she fails to dissent from the terms of the will and take a dower interest, she is bound by her non-action and cannot afterwards claim in the one case a child's part or in the other dower.    See Stephens v. Gibbs, 14 Fla. 331.

It is not necessary for her to take any action to secure dower; the statute confers it upon her.    It becomes vested in her upon the death of her husband; prior to his death it is an inchoate right, but if she desires to take a child's part in lieu of dower, she is required to take some affirmative action, and when the election is made she cannot recall it. It is a right exhausted by one exercise of it.    She cannot at one time say I will take a child's part and then finding the estate to be insolvent, recall that election and have dower set aside.    Therefore the exercise of the right should be made by such means as will definitely and finally conclude her action.    It may be by a written declaration

made of record in the probate office, perhaps by a deed of conveyance reciting her election, but it should not be permitted to rest in parol.

The evidence relied upon to show that Mrs. Newman elected to take a child's part is not sufficient. It rests wholly in parol. Mr. Newman says that after the death of his father he had an agreement with Mrs. Newman by which she agreed in consideration of the relinquishment by the heirs of their claims on certain articles, she would choose a child's part of "real estate" in lieu of dower. By this agreement she sought to limit her election to the "real estate." There is no provision in the statute for taking a child's part in the real estate and dower in the personalty.

Dower under the laws of this State has a broader significance than under the common law and includes the personalty of the deceased husband. See Woodberry v. Matherson, 19 Fla. 778; Sec. 3632, Rev. Gen. Stats., 1920.

Mrs. Andress testified that the day she chose a child's part the day she was appointed administratrix, that she so stated to the Judge of the Probate Court. The reason she gave was not that she had agreed with the children to do so, but that "she wanted to sell out my child's part and get my pay for it during my lifetime." There is a difference between them in the reasons given for her alleged choice. No record is shown to have been made of that election. A matter which affects the title to real estate and the interests of creditors of an estate so vitally as an election of that character should be evidenced by something more conclusive than the verbal statement of a witness more or less interested in the result of the litigation.

The bill in this case should have been dismissed on final hearing. The decree was erroneous and is hereby reversed.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD AND WEST, J. J. dissent.