[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1099 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1100 
This suit was brought for the foreclosure of a mortgage given by W. J. Mullan and H. N. McMasters to Josephine B. Hennington and assigned by her to the Bank of Pasco County. During the lifetime of one L. F. Hennington, he and his wife, Josephine B. Hennington, with certain of their children, lived in a house on certain lots in the town of Zephyrhills, Florida, said lots comprising less than one-half an acre of land. The upper part of the house was used by them as a dwelling place and the lower part was used for business purposes. L. F. Hennington died on January 13, 1918, leaving a will by which he attempted to devise to his wife the said property. The will was probated and the widow, together with the children, one of whom was a minor, continued to reside upon said property, and the widow continued to operate the business *Page 1101 
on the lower floor of said house, she having assisted in running the business while her husband was living. On March 26, 1920, for the consideration of $1.00 and other valuable considerations, the widow, by warranty deed attempted to convey the said property to one A. J. Roberts, who at that time was a roomer in her house, and on the 25th day of June, 1920, by his warranty deed, Roberts reconveyed the property to the said Josephine B. Hennington. While the bill of complaint alleges that at the time of the execution of the deeds respectively, Mrs. Hennington delivered possession of the property to Roberts and that Roberts redelivered such possession to Mrs. Hennington, it is apparent from the transcript that there had been no actual change of possession. Mrs. Hennington continued as theretofore to reside upon the property. Roberts was "in the house at the time as a paying guest." With the exception of $1.00 consideration recited in the deed, what was given by Roberts for a deed or how it was paid is not disclosed. It does appear that when Roberts reconveyed the property to Mrs. Hennington, he had put a new roof on the building, which as she stated, he gave to her and that no money was refunded by her.
On December 1, 1925, Mrs. Hennington by her warranty deed attempted to convey the property to W. J. Mullan and H. N. McMasters and received therefor a cash payment of $8,000.00 and also two certain notes each in the sum of $6,000.00 secured by a mortgage upon the property. In addition thereto, the grantees assumed the payment of an existing mortgage upon the property given to secure the payment of $5000.00. On August 6, 1926, the $12,000.00 mortgage was assigned by Mrs. Hennington to the complainant, the Bank of Pasco County, in exchange for "open notes" that had been given by Mrs. Hennington for amounts *Page 1102 
she owed to the bank. On November 26, 1927, the bank filed its bill to foreclose the mortgage making Mullan and McMasters and the widow Josephine B. Hennington and the children (five) of L. F. Hennington parties defendant. One of the children, Joy Hennington, was a minor. In the bill it is alleged:
 "That the said Josephine B. Hennington, A. J. Roberts, W. J. Mullan and H. N. McMasters, during all the time they held and possessed said property as aforesaid, claimed to be the owners thereof under and by virtue of said last Will and Testament of L. F. Hennington, deceased, and the deeds aforesaid. That the possession aforesaid has been open, notorious, continuous, unbroken, hostile and adverse to all other persons under claims of ownership based upon the said Will and the said deeds; and during said period beginning January 16, 1918, and up to the present time no person has ever disputed the title of said Josephine B. Hennington, the said A. J. Roberts, the said W. J. Mullan and the said H. N. McMasters to the said property, or questioned their right to the possession thereof.
The bill contains the usual prayer for an accounting; for the payment of the amount ascertained to be due; that the titles of the said Mullan and McMasters be quieted; that a receiver be appointed and for general relief.
Two of the children, Anita Williams and Lucile H. Ellis, joined by their respective husbands filed an answer in which they show the homestead character of the property at the time of the death of L. F. Hennington, and they deny that subsequent to the death of the said Hennington the possession of the property was adverse to them, and aver the truth to be that the widow and the *Page 1103 
minor daughter, Joy, continued to live in the home and that the widow continued a mercantile business on a part of the lower floor; that the will was inoperative as a devise of the homestead and that the said Josephine B. Hennington had no interest, title or right in and to the property other than as a widow and that she had not elected within the time provided by statute to take a child's part in the property of the said L. F. Hennington; that her dower had not been assigned to her and that such possession of the property as she had exercised was under her right as widow to occupy the property until the assignment of her dower. They further aver that the said deeds did not convey, nor did the said mortgage incumber, any interest of the defendants Anita Williams and Lucile H. Ellis in and to the said lands. Said defendants incorporated in their answer a demurrer to the bill and assigned as a ground therefor that there is no equity in the said bill. The defendants McMasters and the said Mullan filed an answer in which they averred that after the delivery of the notes and mortgage, claim was made to them that Josephine B. Hennington at the time of making of the deed of conveyance to them was not the owner of the land so conveyed by her. They also set up the claim of the heirs that the property was the homestead of L. F. Hennington at the time of his death and that in the event such claim is upheld the interest of the said Josephine B. Hennington would be of very little value. It is averred further that upon learning of the adverse claim of the heirs, the defendants offered to reconvey the property if the said bank and the said Josephine B. Hennington would cancel the notes; that when they purchased the property they were not acquainted with the circumstances surrounding same and *Page 1104 
the uses to which it had been put, but that the said bank was acquainted with such facts; that the action of said Josephine B. Hennington amounted to a fraud upon them and that she was insolvent. They pray for affirmative relief and ask for an accounting of the moneys laid out and expended by them for and on account of the property; that a decree be rendered in their favor against the defendant Josephine B. Hennington for such amount; that the deed to them and also the notes and mortgage in suit be set aside and cancelled.
A formal answer was filed on behalf of the minor defendant Joy Hennington by her guardian ad litem.
The court decreed among other things the payment of the amount ascertained to be due on the notes, attorneys fees and costs, by the defendants Josephine B. Hennington, Mullan and McMasters; that the defendant Josephine B. Hennington, on December 1, 1925, was the owner in fee simple of an undivided four-fifths interest in the said property and that the defendant Joy Hennington, a minor, was and still is the owner of the other undivided one-fifth interest therein, and that in default of such payments the property be sold.
From this decree, the defendants Mullan and McMasters and also the defendants Anita Williams and Lucile H. Ellis, and their respective husbands, have appealed to this Court.
It is not contended here that the property was not the homestead of L. F. Hennington at the time of his death. Being such homestead, it enured to his widow and heirs (Section 2, Article X., Constitution of Florida) and could not be devised by said L. F. Hennington to the said Josephine B. Hennington. Wilson v. Fridenberg, 21 Fla. 386; Scull v. Beatty, 27 Fla. 426, 9 So. 4; Brokaw v. McDougall, *Page 1105 20 Fla. 212; Walker v. Redding, 23 So. 565, 40 Fla. 124; Caro v. Caro, 45 Fla. 203, 34 So. 309; Palmer v. Palmer, 47 Fla. 200, 35 So. 983; Griffith v. Griffith, 59 Fla. 512, 52 So. 609, 138 Am. St. Rep. 138, 21 Ann. Cas. 246; Parker v. Penny,95 Fla. 922, 117 So. 703; Moore v. Price, 98 Fla. 276,123 So. 768.
In all cases in which the widow of a deceased person shall be entitled to dower, she may elect to take in lieu thereof a child's part, but such election must be made within 12 months after the probate of the will or granting of letters of administration or she shall be confined to her dower. Sec. 5496 (3632) Compiled General Laws of Florida, 1927.
If a widow elects to take a child's part in lieu of dower, she is required to take some affirmative action which must be evidenced "by such means as will definitely and finally conclude her action. It may be by a written declaration made of record in the probate office, perhaps by a deed of conveyance reciting her election, but it should not be permitted to rest in parol." Serkissian v. Newman, 85 Fla. 388, 96 So. 378.
When L. F. Hennington died, the homestead descended to his children subject to the right of the widow to dower or a child's part therein and if she failed to elect to take a child's part in the manner and within the time provided by law, she is confined to dower in such property. Sec. 5484 (3620) Compiled General Laws of Florida, 1927.
It appears that the widow did not elect to take a child's part in lieu of dower and inasmuch as the will is void as to the homestead she, not having elected within 12 months from the probating of the will to take a child's *Page 1106 
part, is confined to her dower therein. Moore v. Price, supra.
Under our statute the widow had the right to retain full possession of the dwelling house together with the "offices or improvements thereto belonging, free from molestation or rent," until her dower was assigned to her. Section 5497 (3633) Compiled General laws of Florida, 1927; Moore v. Price, supra; Palmer v. Palmer, supra; Raulerson v. Peeples, 79 Fla. 367, 84 So. 370.
The duty did not devolve upon the widow Josephine B. Hennington as such to initiate proceedings for assignment of her dower in the homestead, and if no action was taken by her as widow or by executor, she could "await the action of the heirs" and with the minor child or children continue to occupy the dwelling house until her dower was allotted to her. Moore v. Price, supra; Raulerson v. Peeples, supra.
This Court has sanctioned the rule that " 'while courts of equity fully recognize the rule that at law, the widow's right of dower, previous to an assignment, is not such an interest as can be made the subject of a conveyance to a stranger by any of the ordinary modes of conveying freehold estates, so as to vest the legal interest in the grantee, yet in those courts, if the widow be entitled to an immediate assignment of dower, the want of a mere formal assignment is not considered material, and her contract concerning her interest may be of such character that it will be enforced.' " Raulerson v. Peeples, supra. And the Court held in the Raulerson case that a deed which purported to convey a "one-third undivided interest" in the property that belonged to her deceased husband prior to his death (there being no legal election to take a child's part in lieu of dower) to be an assignment *Page 1107 
of her right of action for dower and that it conferred upon her grantee or his assigns all the rights of the widow to have dower assigned.
A widow whose dower has never been assigned to her cannot, by merely remaining in possession, acquire title by adverse possession, as against the heirs. 9 R. C. L. 612; Chavers v. Mayo, 202 Ala. 128, 79 So. 594; See also note 19 L. R. A. 839.
Since the widow had not elected to take a child's part in the homestead in lieu of dower and since her dower therein had not been assigned or allotted to her, her deed to Roberts some 26 months after the probating of the will vested in him no legal interest in the property, but conferred upon him whatever rights she as widow had to have her dower therein assigned. In deeding the property back to Josephine B. Hennington, Roberts could convey no better title, interest or right than he had acquired from her; namely, the right to have dower assigned to her.
There is nothing in the transcript that tends to show that the widow, Josephine B. Hennington, for some time after the death of her husband, was in possession of the property other than as widow, exercising the right of quarantine under our statute.
The possession of a parent of his child's land will not be deemed adverse to the child. Such possession subject to certain general exceptions will be presumed to be permissive and not adverse. 2 C. J. 156; 1 R. C. L. 756.
Where the possession is originally taken and held under the true owner, a clear, positive and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner, are indispensable *Page 1108 
before any foundation can be laid for the operation of the statute of limitations. 2 C. J. 134.
We may concede that the will could be used as a basis for asserting title by adverse possession, and it would still be necessary for a showing to be made that the widow had put the children (heirs of L. F. Hennington) upon notice that she was claiming title under the will adversely to them. No such showing was made.
The appellee Bank of Pasco County, in contending that the widow acquired a valid title to the homestead by adverse possession based on a void will, cites to us the case of Commercial Bldg. Co. v. Parslow, 93 Fla. 143, 112 So. 378. In that case one Domineco Ghira, the head of a family, died, leaving a will in which he devised all of his property to his wife for life and at her death to his four children, designating specific parcels to each child. To his daughter Euphemia, he devised, by way of remainder, among other parcels, the homestead. In less than three weeks after the death of the father, a son, Francis J. Ghira, died leaving a will in which he devised all of his property to his mother for life and at her death to his sister, Euphemia for life, and at her death to the children of two married sisters and also to the children of his sister Euphemia, if any, share and share alike. The mother resided on the homestead with her son Francis J. and her daughter Euphemia until the son died and then with the daughter until 1900 when the mother died, at which time the daughter went into possession of the property under the terms of her father's will, and occupied it for a short time and then rented it and used the rents until she sold it in 1910. In the meantime she had taken quit-claim deeds to the property from her sisters of all their right and interest therein; prosecuted *Page 1109 
to a final decree, a suit to quiet her title thereto and had obtained quit-claim deeds from the heirs of her father's vendors. The mother and all of the children had accepted the provisions of the father's will and at no time had raised any question as to its validity. The grantees of Euphemia conveyed the property to Commercial Building Co., who removed the old building and put up a sign on the property giving notice to the public of its ownership and let it be known that the property would be improved by the erection of a building thereon that would be ready for occupancy by January 1, 1911. Though the complainants were born and reared within three blocks of the property and had knowledge of the deeds and changes pertaining thereto, this building, when it was completed, was occupied by the Commercial Building Company for more than 14 years prior to the bringing of suit by them, the children of the two sisters of Euphemia, for the purpose of having their title determined and quieted. When the case was before this Court, it was held "that from the time Mrs. Kelliher (Euphemia) went into possession of the homestead on the death of her mother in 1900, she abandoned and renounced any claim she may have had therein as a life tenant and held adversely to the remaindermen (children of her sisters); that, from the time of the sale toPetteway and associates in 1910, (italics supplied) the remaindermen had actual knowledge of Mrs. Kelliher's adverse claim;" that those of the appellees who had attained their majority more than seven years before the filing of the suit were barred by the statute of limitations, and as to those who had not attained their majority more than seven years before filing suit, but were married women, the statute of limitations as to them would begin to run from coverture *Page 1110 
if that occurred prior to attaining their majority.
In the instant case, we have an entirely different state of facts. The widow never entered into possession of the homestead under the terms of the will. She was living thereon at her husband's death and continued to reside there.
It may be that it was her intention to hold the property as the owner of the fee, but if she claimed in good faith title thereto by virtue of the will, it is not shown that Mrs. Williams or Mrs. Ellis had any knowledge of such claim prior to the negotiations with Mullan and McMasters in 1925, when Mrs. Hennington mentioned to Mr. and Mrs. Williams the consideration for the property "just as a matter of information, just as if some other parties were negotiating the deal." It was never mentioned to Mr. or Mrs. Ellis.
There is nothing unusual in the circumstance that married children of a deceased, living away from the home place, permit the widow to occupy the home for an indefinite period of time and without requiring an accounting for the use of it. For us to say, in such cases, that children, for such indulgence, should forfeit their right of property in the homestead would be sanctioning a rather harsh doctrine. This we cannot do, unless it be clearly shown that knowledge of a hostile claim on the part of the widow has been brought home to the children a sufficient length of time to bar them under the statute of limitations from asserting their rights.
But it is insisted here that the execution of a deed from Mrs. Hennington to Roberts and the recording of such deed were acts sufficient to put the heirs on notice of an adverse claim. We think not. Conceding that the deed from the widow to Roberts was insufficient to convey *Page 1111 
the fee, it was sufficient to constitute a color of title in a stranger to the title and he would not be estopped from taking and holding the possession of the lands in hostility to the heirs. Cooper v. Watson, 73 Ala. 252; 2 C. J. 161. But it takes something more than the execution and delivery and recording of a warranty deed to establish a title by adverse possession. There should be an entry thereunder to the exclusion of the rights of all others.
 "Every presumption is in favor of a possession in subordination to the title of the true owner, and an adverse possession as against such owner must be established by clear and positive proof." Gilbert v. Southern Land Timber Co., 53 Fla. 319, 43 So. 754; Hyer v. Griffin, 55 Fla. 560, 570, 46 So. 635.
We have seen that there was in fact no entry under either of these deeds — no change of possession. Certainly there is nothing in the record that would even tend to show the assertion of a claim to the property on the part of Roberts to the exclusion of the heirs, or that he ever claimed any kind of title to or interest therein inconsistent with the title of the children. If the deed to him was valid for any purpose, it was only good in equity as we have seen for an assignment of the right of action of the widow for her dower in the property. If the "other valuable considerations" for the deed from Mrs. Hennington to Roberts was paid in cash, it seems improbable that Roberts would have put a new roof upon the house and then reconveyed so valuable a piece of property without having at least a part of the cash paid back to him. If it was not paid in cash, but was represented by notes or securities, it is unbelievable that he would turn back the property without a return of *Page 1112 
what he had given for the deed. In any event after the reconveyance to her, the widow, who at all times after the death of her husband had been occupying the house had no greater right to the property than she had at the time she attempted to convey it to Roberts, which was the right of possession of the homestead until the assignment of her dower therein. For the possession of the widow to be adverse to the children, there must have been some open assertion of a hostile claim of title other than mere possession and notice of such claim must have been brought home to them. 2 C. J. 157; Harrison v. Speer, 94 Fla. 937, 942, 114 So. 515. Her possession of the property continued until she again assigned her right of action for dower by executing and delivering her warranty deed to the appellants Mullan and McMasters, who were as to the title in nor more favored position than was Roberts under the deed to him.
In Commercial Bldg. Co. v. Parslow, supra, this Court said:
 "The general rule is that neither laches, estoppel nor the statute of limitations will run against a remainderman prior to the termination of the life tenancy. This rule is, however, predicated on an uninterrupted continuation of the conduct of the life tenant consistent with his duty as such to the remainderman. The rule may not apply where it is shown that the remainderman had actual knowledge of the repudiation or abandonment by the life tenant of his status as such, and of the holding by him of the property under a different and adverse right or where the life tenant in good faith and to the knowledge of the remainderman claims title, not as a life tenant, but through some other source, or where there has been ouster and disseisin of the life tenant or by one claiming by, through *Page 1113 
or under him, and this under claim of right or color of title followed by adverse possession for the statutory period, or when there is some special independent equity in favor of the purchaser who claims under a conveyance from the life tenant."
Now the widow in the instant case was not a life tenant of the homestead, but until dower was assigned therein she had a right as widow to the possession of the property and her legal relations to the children as to such property were the same as if she had been a life tenant of the same by reason of its allotment to her as her dower in the estate of her husband. If it was not her duty to pay the taxes on the property and look after its upkeep, such acts were not repugnant to the theory that she held possession as widow whose dower had not been assigned. If Mullan and McMasters entered into possession of the property under the deed to them and held the same under such circumstances as would show a possession adverse to the title of the heirs, the statute of limitations began to run from such entry. 2 Thompson on Real Property 1006, 1009. Having no title by virtue of the deed, and their possession, if any, not being long enough to establish title by adverse possession, they were as assignees of the right of action for the widow's dower entitled to such possession until such dower was legally assigned.
Mullan and McMasters having acquired no title to the property, they could not place a lien upon the same that would be binding upon the heirs.
Respectable authority may be found to sustain the proposition that prior to assignment of dower the widow's right cannot be mortgaged to a person not vested with the fee, or to a person not in possession or in *Page 1114 
privity with the estate from which it accrued. 19 C. J. 535; Salem Nat. Bank v. White, 159 Ill. 136, 42 N.E. 312. This Court in Raulerson v. Peeples, supra, followed a rule somewhat more liberal than the rule observed in some of the states relative to the disposition by a widow prior to the assignment of dower of her right thereto. We hold that upon the death of a husband, his widow's right of dower is a fixed right or interest, vested in her as widow, and though it is not regarded as an interest in land but rather as a chose in action (9 R. C. L. 593) it may be mortgaged, and upon foreclosure be assigned by a master for a consideration.
The Court erred in decreeing that on December 1, 1925, the defendant Josephine B. Hennington was the owner in fee simple of an undivided four-fifths interest in the lands in question, that she by her warranty deed conveyed to W. J. Mullan and H. N. McMasters a fee simple title to an undivided four-fifths interest in and to the same, and that such undivided four-fifths interest in the said lands be sold.
It is contended by the appellants Mullan McMasters that if the contention of other appellants as to the homestead character of the lands is upheld, the consideration for the notes and mortgage in suit will totally fail; that the Bank of Pasco County became the owner and holder of the notes with full knowledge and notice of the adverse claim to the title and of all the facts and circumstances upon which said adverse claim of title is based.
The notes and mortgage were assigned to the bank for a valuable consideration before either of the notes became due. Relative to such defensive matter in 1 Wiltsie on Mortgage Foreclosure, (4th Ed.) Secs. 221 *Page 1115 
and 222 the majority and minority rules are discussed, but in Section 221, it is said that:
 "The rule best supported by reason and authority and adopted in the majority of the states, is that, inasmuch as the mortgage is a mere incident to the indebtedness, an assignee for value before maturity of negotiable promissory note secured by mortgage, is entitled to the same privileges and immunity with respect to an action to foreclose the mortgage, to which he would be entitled in an action on the note. He takes good title and is free from all those defenses, which would not be valid against the holder in due course of a negotiable instrument."
Our statute defines a holder in due course as "a holder who has taken the instrument under the following conditions:
 "1. That it is complete and regular upon its face;
 "2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
 "3. That he took it in good faith and for value;
 "4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."
 Section 6811 (4725) Compiled General Laws of Florida, 1927.
 "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter." Section 6817 (4731) Compiled General Laws of Florida, 1927. *Page 1116 
Absence or failure of consideration is a matter of defense as against any person not a holder in due course; and a partial failure of consideration is a defense pro tanto whether the failure is an ascertained and liquidated amount or otherwise. Section 6788 (4702) Compiled General Laws of Florida 1927. See Jones v. Manitowoe Shipbuilding etc. Co., 65 Fla. 467, 62 So. 590; Roess Lumber Co. v. State Exch. Bank, 68 Fla. 324, 67 So. 188, L. R. A. 1918 E. 297, Ann. Cas. 1916 B 327.
It devolved upon the appellants Mullan and McMasters to establish by evidence that the Bank of Pasco County, at the time of the assignment of the mortgage to it, had notice of the adverse claim of title on the part of certain heirs, and of all facts and circumstances upon which such adverse claim was based. The evidence fell far short of what was necessary to sustain their contention. They relied upon notice to the president of the bank to support the allegations of their answer. If they had succeeded in proving that such knowledge was brought home to the person who was the president of the bank without showing further that he acquired such knowledge while acting for the bank, that would not have been sufficient to establish the allegations of the answer. Roess Lumber Co. v. State Exch. Bank, supra; Aycock Bros. Lumber Co. v. First National Bank, 54 Fla. 604, 45 So. 501.
The bill contains no allegation nor does the record show, that the complainant had agreed or had obligated itself to pay any fee or commission to its solicitor for the collection of the money secured by the mortgage. Therefore, under the rule stated by this Court, the lower court erred in allowing a solicitor's fee to complainant for the foreclosure of the mortgage. Berns v. Harrison, ___ Fla. ___, 131 So. 654; Blount Bros Realty Co., v. Eilenberger, *Page 1117 98 Fla. 779, 124 So. 284; Brett v. First Nat. Bank of Marianna,97 Fla. 284, 120 So. 554; U.S. Savings Bank v. Pittman, 80 Fla. 423, 86 So. 567.
The decree is reversed and the cause is remanded with directions to dismiss the bill as to Anita Williams and her husband D. R. Williams and Lucile Ellis and her husband T. B. Ellis, Jr., and Joy Hennington, and to enter a decree that will conform to the views herein expressed.